UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN THE MATTER OF:                                    CASE NUMBER:

**Roy Randolph Carpenter, Jr.**                      **09-03678-8-SWH**
SS#: xxx-xx-8997
**Penny Averette Carpenter**
SS#: xxx-xx-0333
Mailing Address:
        2008 Sanders Road
        Stem, NC 27851

              Debtors.                               Chapter 13


**BRIEF OF DEBTORS REGARDING
OBJECTION TO CLAIM OF FRANKLIN SIS CORPORATION**


Joseph A. Bledsoe, III
Attorney at Law
6616-203 Six Forks Road
Raleigh, NC 27615
(919) 847-9750
Fax: (919) 847-3439
jbledsoe@johnorcutt.com
NC State Bar No.: 19817

## TABLE OF CONTENTS

**Page**

TABLE OF CASES     ii

TABLE OF STATUTES     ii

TABLE OF OTHER ITEMS CITED     iii

I.    STATEMENT OF JURISDICTION AND VENUE     1

II.   STATEMENT OF THE ISSUE     1

III.  STATEMENT OF THE FACTS     1

IV.  ARGUMENT     3

The Deed of Trust executed by the Carpenters with respect to the said property on April 16, 1997 is invalid, or was otherwise unenforceable as of the date of the filing of the Carpenters' bankruptcy Petition, and as a result the claim of Franklin SIS against the Carpenters should be properly treated as a general unsecured claim.

A.    The Deed of Trust executed and recorded in 1997 was effectively satisfied and became void upon the conveyance of the said property by the Carpenters to Franklin in May of 2003.     6

B.    Neither the 2003 nor 2007 contracts served to reinstate or otherwise re-validate the 1997 Deed of Trust.     7

V.   CONCLUSION     9

## TABLE OF CASES

*In re Foreclosure of Deed of Trust of Enderle*, 110 N.C.App. 773, 431 S.E.2d 549 (1993)          7

*In re Head Grading Co., Inc.*, 353 B.R. 122 (Bankr. E.D.N.C. 2006)          7

*Matter of Estate of Tucci*, 94 N.C.App. 428, 380 S.E.2d 782 (1989)          9

*Simms v. Hawkins*, 1 N.C.App. 168, 160 S.E.2d 514 (1968)          6

*Walston v. Twiford*, 248 N.C. 691, 105 S.E.2nd 62 (1958)          6

## TABLE OF STATUTES

**Federal Statutes:**

11 U.S.C. § 362(a)(3)          5

11 U.S.C. § 362(a)(4)          5

11 U.S.C. § 362(a)(7)          5

11 U.S.C. § 541(a)(1)          4, 5

11 U.S.C. § 544          9

11 U.S.C. § 544(a)(1)          4

11 U.S.C. § 544(a)(3)          4

11 U.S.C. § 558          4, 9

11 U.S.C. § 1325(a)(4)          10

11 U.S.C. § 1325(a)(5)          5

11 U.S.C. § 1327(b)          5

11 U.S.C. § 1327(c)          5

28 U.S.C § 157(b)(1)          1

28 U.S.C § 157(b)(2)(B)          1

28 U.S.C § 157(b)(2)(K)          1

28 U.S.C § 157(b)(2)(O)          1

28 U.S.C § 1408(l)          1

**State Statutes:**

N.C.G.S. § 45-21.38                                                    6-7

N.C.G.S. § 47-18                                                        4

## TABLE OF OTHER ITEMS CITED

17 Am.Jur.2d, Contracts Sec. 494 at 967 (2d ed. 1964)                   9

Webster;s Real Estate Law in North Carolina                            6
(James A Webster, Patrick H. Hetrick & James B. McLaughlin, Jr., 5th ed.  1999)

## I.    STATEMENT OF JURISDICTION AND VENUE

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1).  Venue is proper under 28 U.S.C. § 1408(1), and this is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B), (b)(2)(K) and/or (b)(2)(O).

## II.    STATEMENT OF THE ISSUE(S)

Whether or not the claim held against the debtors by Franklin SIS is Corporation (hereinafter "Franklin") is secured by a lien against certain real property in which the Carpenters have an interest and located at 2008 Sanders Road in Stem, North Carolina.

## III.    STATEMENT OF THE FACTS

In March of 1997, Roy and Penny Carpenter entered into a land-sale contract with Franklin (see attached Exhibit A) for the purchase of certain real property located in Stem, North Carolina (said property).  Under the terms of such contract, the Carpenters agreed to pay the sum of $102,615, of which $12,000 was to be paid at the time of the execution of the contract, and with the balance ($90,615) to be paid in 360 monthly installments of $696.67 each, at an annual percentage rate of 8.2 percent. The contract also provided that upon the payment of six monthly payments by the Carpenters, or alternatively upon the payment of $500 toward the principal amount of the purchase price, Franklin would convey title to the said property to the Carpenters by General Warranty Deed, and the remaining balance of the purchase price would be evidenced

by a Promissory Note, with the payment of such balance would be secured by a purchase money Deed of Trust against the said property.  At that point, then, the agreement was for the parties to convert the land-sale agreement into a more traditional real estate sales transaction.

On April 15, 1997, the Carpenters did in fact execute a Promissory Note evidencing their agreement to pay $90,615 to Franklin in 360 equal monthly installments of $696.97 each, with the first payment being due and payable on May 1, 1997.  The Note further evidenced that it was being given "for purchase of real property" and would be secured by a "Purchase Money Deed of Trust of even date".  (Attached Exhibit B).  A North Carolina Deed of Trust was also prepared in connection with the Note and transaction, which Deed of Trust was dated April 15, 1997, but which was executed on April 16, 1997.  (Attached Exhibit C).  Finally, on April 17, 1997, a Deed was executed conveying the said real property from Franklin to the Carpenters.  (Attached Exhibit D).

Subsequently, the Carpenters defaulted under the terms of the Note and Deed of Trust, and on May 20, 2003, the Carpenters reconveyed title in the said property to Franklin.  (Attached Exhibit E).  However, the General Warranty Deed by which the conveyance was made was not immediately recorded, and in fact, as of the date of the Carpenters' bankruptcy filing, said Deed remained unrecorded.  A week after the execution of the Deed, on May 27, 2003, Franklin and the Carpenters entered into another land-sale contract (Exhibit F) which was, in most respects, identical to the one entered into by the parties in 1997.  Indeed, it was the same "form" contract used in 1997, but this time the contract reflected a purchase price for the said property of $120,432.59, to be paid in 207 monthly installments of $1,300 each, beginning on June 1, 2003.  Seventy-three months had passed since the first payment had come due under the 1997 Note.

Like in 1997, the 2003 contract provided that Franklin would transfer title to the said property to the Carpenters upon the payment of six monthly payments or the payment of $500 toward the principal of the purchase price. Also as in 1997, the 2003 contract provided that, at such time as title was transferred, the agreement would be transformed into a traditional real estate sales agreement, evidenced by a Note and Deed of Trust.

By May of 2007, both parties had defaulted under the terms of the 2003 contract. Specifically, the Carpenters had failed to make all of the equal monthly payments for which the 2003 contract had provided. Notwithstanding, the Carpenters had made at least 6 installments, and yet Franklin had failed to transfer title, and no new Note or Deed of Trust had been executed. So, on May 11, 2007, the parties entered into yet another land-sale contract. (Attached Exhibit G). Again, the parties used the same "form" contract, changing only the dates, purchase price and payment terms. Specifically, the 2007 contract provided for a purchase price of $121,951.92, which was to be paid in 210 equal monthly installments of $1,310.00 each, beginning on May 17, 2007. One hundred twenty-one months had passed since the first installment had come due under the 1997 Note. As did both contracts before, the 2007 contract provided for the transfer of title upon the payment of six monthly payments or of $500 toward the principal, and provided for the conversion of the agreement into a traditional mortgage agreement at such time. Again, however, no new Deed, Note or Deed of Trust were executed.

On May 4, 2009, the Carpenters filed a Voluntary Petition under chapter 13 of the United States Bankruptcy Code. Subsequently, on October 7, 2009, Franklin caused the 2003 Deed to it from the Carpenters to be recorded with the office of the Granville County Register of Deeds.

3

## IV.   ARGUMENT

**The Deed of Trust executed by the Carpenters with respect to the said property on April 16, 1997 is invalid, or was otherwise unenforceable as of the date of the filing of the Carpenters' bankruptcy Petition, and as a result the claim of Franklin SIS against the Carpenters should be properly treated as a general unsecured claim.**

As of the date of the filing of the Petition, a bankruptcy trustee enjoys the status of both a hypothetical lien creditor against, and a bona fide purchaser of real property for value from, the debtors. 11 U.S.C. § 544(a)(1) and (a)(3). Pursuant to North Carolina's "Connor Act," no conveyance of land is effective as against lien creditors or purchasers for valuable consideration until such time as the instruments of conveyance are registered in the office of the appropriate county's Register of Deeds, and the trustee on behalf the estate has the benefit of any defense available to the debtor against any entity other than the estate. N.C.G.S. § 47-18 and 11 U.S.C. § 558, respectively. Finally, the "bankruptcy estate" is, with certain limited exceptions, comprised of all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1).

Upon the filing of their chapter 13 Petition, the Carpenters' interest in the said property became property of their bankruptcy estate. Although under North Carolina law an unrecorded, but written conveyance of an interest in land is valid as between the parties, the 2003 Deed from the Carpenters to Franklin was ineffective as against the interests of the trustee under 11 U.S.C. § 544, especially in light of N.C.G.S. § 47-18. Furthermore, under both the 2003 and 2007 land sales contract, Franklin became obligated to transfer title to the said property to the Carpenters upon the payment of 6 monthly payments. Notably, the contracts did not require 6 consecutive payments, but simply that the Carpenters make "6 monthly payments." (*See* Contracts, paragraph

4

3, titled "DELIVERY OF TITLE").  It is also notable that the Proof of Claim filed by Franklin in this matter (attached Exhibit H) indicates that at least 6 monthly payments were made by the Carpenters on the 2007 contract between the date of its execution and the date of the filing of their chapter 13 Petition.[1]  Accordingly, it is clear that the Carpenters had at least an equitable interest in the said property under the 2007 contract, which equitable interest would also have become property of the estate upon the bankruptcy filing.  11 U.S.C. § 541(a)(1).  As a result, the recording of the 2003 Deed by Franklin in October of 2009 was in violation of the automatic stay, and in particular was in violation of 11 U.S.C. § 362(a)(3), (a)(4) and/or (a)(7).

The only issue, then, is whether or not the Deed of Trust filed with respect to said property was valid or remained effective as of the Petition filing date.  If the claim of Franklin is deemed to be secured, then in order for the plan to be confirmed, Franklin's claim will have to be provided for by the plan in accordance with 11 U.S.C. § 1325(a)(5).[2]  On the other hand, if its claim is deemed to be unsecured, then upon confirmation of the plan and provided the plan treats Franklin's claim as it does other general unsecured claims, title to the said property will re-vest in the Carpenters free and clear of any interest Franklin may otherwise have had, in accordance with 11 U.S.C. § 1327(b) and (c).

---

[1]  The Proof of Claim indicates that, as of the Petition filing date, the Carpenters were due for 5 monthly payments in the amount of $1,250 each.  Since the first payment came due under the 2007 contract on May 17, 2007, and had elapsed from that date until May 4, 2009, it is clear that the Carpenters made at least 18 payments on the contract, by Franklin's own account.  Furthermore, the 2007 contract was attached to Franklin's Proof of Claim as being the basis for its claim.

[2]  When the Carpenters' Petition was filed, they believed Franklin had a claim which was secured by a Deed of Trust against the said property, and accordingly their proposed plan provided for the treatment of Franklin's claim as required under § 1325(a)(5).

**A.    The Deed of Trust executed and recorded in 1997 was effectively satisfied and became void upon the conveyance of the said property by the Carpenters to Franklin in May of 2003.**

"A mortgage is a conveyance by a debtor to his creditor, or to some one in trust for him, as security for a debt." *Walston v. Twiford*, 248 N.C. 691, 693, 105 S.E.2nd 62, 64 (1958). The "conveyance" made is an interest in land owned by the debtor, and if the conveyance is made directly to the creditor, the transaction is considered a traditional mortgage. If the conveyance is made to someone in trust, the transaction is accomplished using a Deed of Trust. In either instance, the mortgage or Deed of Trust is the instrument which secures the repayment of a debt, while it is the Promissory Note that actually evidences the debt.

"Upon the execution of a mortgage or deed of trust on real estate, legal title to the land vests in the mortgagee or trustee, as the case may be, but only as security for payment of the debt." *Simms v. Hawkins*, 1 N.C.App. 168, 169, 160 S.E.2d 514, 515 (1968). Thus, [t]he estate of a . . . trustee in a deed of trust . . . is a determinable fee terminating the instant the debt is paid . . .." *Id.*, at 170, 515. Furthermore, "[a] mortgage which purports to secure the payment of a debt has no validity if the debt has no existence." *Walston*, 248 N.C. at 64, 105 S.E.2nd at 693. Put yet another way, "[i]f the debt *terminates or is invalid*, the mortgage is also invalid." WEBSTER;S REAL ESTATE LAW IN NORTH CAROLINA, p. 524 (James A Webster, Patrick H. Hetrick & James B. McLaughlin, Jr., 5[th] ed. 1999)(emphasis added).

It is important to note that the Promissory Note executed by the Carpenters in 1997 specifically reflected that it was given "for purchase of real property". Likewise, the 1997 Deed of Trust contained the explicit statement, "THIS IS A PURCHASE MONEY DEED OF TRUST." These notations are important because, under these circumstances, N.C.G.S. § 45-

6

21.38 (anti-deficiency statute) would operate to prohibit Franklin from obtaining a deficiency

judgment against the Carpenters in the event it opted to exercise its right to foreclose under the

Deed of Trust.  Had it foreclosed, Franklin would have been limited to the proceeds from the

sale, but could not have otherwise pursued the Carpenters for any remaining "balance."  It is not

surprising, then, that Franklin opted instead to have the Carpenters reconvey the property.  At

such point, Franklin became not simply the holder of a determinable fee in the said property, but

its owner in fee simple absolute.  Once it owned the said property outright, any rights or interests

in the said property otherwise provided under the Deed of Trust belonged to Franklin in spite of

the Deed of Trust, and that document became a nullity.  Furthermore, the combination of North

Carolina's anti-deficiency statute and the 2003 conveyance tp Franklin effectively satisfied the

Promissory Note.

**B.      Neither the 2003 nor 2007 contracts served to reinstate or otherwise re-validate the 1997 Deed of Trust.**

"North Carolina law requires deeds of trust to specifically identify the debt referenced

therein."  *In re Head Grading Co., Inc.*, 353 B.R. 122, 123 (Bankr. E.D.N.C. 2006).  A deed of

trust which does not "properly 'identify the obligation secured'" is invalid.  *In re Foreclosure of

Deed of Trust of Enderle*, 110 N.C.App. 773, 775, 431 S.E.2d 549, 550 (1993).  Thus, a Deed of

Trust which refers to a note "of even date herewith," but which purportedly secured an obligation

evidenced by a note dated one day after the Deed of Trust, was found to be invalid.  *In re Head

Grading*, 353 B.R. at 123.  Thus, in order for Franklin to be secured by the 1997 Deed of Trust, it

appears it would be necessary for the court to find that either the 2003 or 2007 contracts, or both,

relate back to and could be considered supplemental to the 1997 Promissory Note.  Clearly,

7

however, each of these contracts were considered by Franklin to be new obligations, separate and distinct from that of 1997, which makes such a finding impossible.

To begin with, both the 2003 and 2007 contracts recited a different "purchase price," different both from each other and from the 1997 Promissory Note. Ideally, if these contracts were meant to supplement, but otherwise be a part of, the 1997 Promissory Note, they should have recited the same purchase price, with the remaining balance and payment amounts adjusted to account for payments made and additional charges added to the account. Furthermore, although both the Promissory Note and Deed of Trust contain provisions for the advancement of additional funds,[3] the Note and Deed of Trust provided for an interest rate on such advances of 8.5 percent, while the 2003 and 2007 contracts each provided for an interest rate of 11 percent. Finally, the 1997 Promissory Note provided for a payment schedule of 360 payments, with the first payment coming due on May 1, 1997. Thus, as of the effective date of the 2003 contract, there would have been 287 months remaining under the Promissory Note's repayment schedule, and as of the effective date of the 2007 contract, there would have remained 239 months remaining. Notwithstanding, the 2003 and 2007 contracts called for a payment of 207 and 210 installments, respectively. Clearly, then, the only relation the 2003 and 2007 contracts bore to the 1997 Promissory Note was that they involved the purchase of the same property, and even to the extent that the silent reconveyance of the property back to Franklin in 2003 may be said *not*

---

[3] The Promissory Note provided that "additional amounts may be advanced by the holder hereof as provided in the instruments, if any, securing this Note and such advances will be added to the principal of this Note and will accrue interest at the above specified rate . . .." The Deed of Trust provides that the Beneficiary may "make advances to perform . . . covenants or obligations [contained in the Deed of Trust] and all such sums so advanced shall be added to the principal sum [and] shall bear interest at the rate provided in the Note secured hereby for sums due after default . . ."

to have satisfied the 1997 Promissory Note, there was at the very least an "implied rescission" of the Note by virtue of the fact that the terms of the later contracts were wholly inconsistent with those recited in the Promissory Note and Deed of Trust. *Matter of Estate of Tucci*, 94 N.C.App. 428, 435, 380 S.E.2d 782, 786 (1989) ("[i]t is well-settled that 'a contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties . . ..'"), *quoting* 17 AM.JUR.2D, Contracts Sec. 494 at 967 (2d ed. 1964). Regarding the interest rate and repayment schedule, the inconsistencies were explicit.

## V.    CONCLUSION

The Deed of Trust securing repayment of the 1997 Promissory Note executed by the Carpenters in favor of Franklin was invalid and unenforceable as of the date of the filing of the Carpenters' Petition on May 4, 2009. Either the Promissory Note had been effectively discharged and satisfied by the silent reconveyance of the said property to Franklin in 2003, coupled with the fact that Franklin was estopped from pursuing a deficiency claim against the Carpenters, or alternatively it had been revoked by the 2003 and/or 2007 contracts. Either way, once it became invalid, the 1997 Deed of Trust also became invalid. Since the Deed of Trust specifically referred to a note "of even date", it could not serve to secure the later contracts.

Even if the 2003 silent conveyance from the Carpenters to Franklin would otherwise have been effective against the parties, it was not effective as against the trustee and his strong-arm powers under § 544. Furthermore, the trustee has standing under § 558 to challenge the validity

9

of the Deed of Trust for the benefit of the bankruptcy estate. The recording of the previously

silent Deed by Franklin post-Petition was in violation of the automatic stay, and therefore such

action is void (or at least voidable), and Franklin should be required to immediately execute a

Deed conveying the property back to the Carpenters, who will have to account for the equity in

the property in terms of meeting the liquidation test of 11 U.S.C. § 1325(a)(4). Provided the

Carpenters' plan provides for the proper treatment of Franklin's claim as a general unsecured

claim, title to the said property will revest in them from the estate, free and clear of any interest

Franklin would otherwise have had in the property, and upon confirmation of the plan the

Carpenters will be the rightful owners of the said property, fee and clear. In addition to an Order

directing Franklin to reconvey the property to the Carpenters, its claim should be allowed in their

case as a general unsecured claim.

Respectfully submitted this the 22nd day of January, 2010.

**Law Offices of John T. Orcutt, P.C. by**

s./ Joseph A. Bledsoe, III
Joseph A. Bledsoe, III
Attorney at Law
6616-203 Six Forks Road
Raleigh, NC 27615
(919) 847-9750
Fax: (919) 847-3439
jbledsoe@johnorcutt.com
NC State Bar No.: 19817

10

EXHIBIT A

111 Hilton Avenue
Durham, N.C. 27707

(919) 489-3888.

THIS CONTRACT OF PURCHASE AND SALE made and entered into this the _1st_ day of _MARCH_, 19_97_, by and between FRANKLIN SIS CORPORATION, (Seller), and _PENNY A. et Roy R. CARPENTER_ (Buyer);

Subject to the terms and conditions set out below and on the reverse side of this contract, Seller has contracted to sell to Buyer, and the Buyer has contracted to purchase from the Seller, Lot #_1_ in Tally Ho Township, Granville County, North Carolina, containing _3,298_ acres as shown on plat attached hereto.

The terms and conditions of this sale and purchase are as follows:

PURCHASE PRICE: The Buyer agrees to pay the Seller the sum of $ _102,615_ _00_ as the purchase price for the property, of which $ _12,000_ is being paid at the time of execution of this contract. The remaining sum of $ _98,615_ _00_ with interest thereon at _8.5_ % per annum (ANNUAL PERCENTAGE RATE), shall be amortized and paid in _360_ equal monthly installments of $ _696.67_ beginning on the _1st_ day of _MAY_, 19_97_, and continuing on the same day of each calendar month thereafter until all principal and accumulated interest have been paid in full. Installments paid shall be credited first to interest and the balance to the reduction of principal. The balance of the purchase price shall be evidenced by a promissory note secured by a purchase money deed of trust on the property.

DELIVERY OF TITLE: Title shall be conveyed by general warranty deed to be delivered and recorded after the Buyer has made 6 monthly payments. Buyer may also demand and receive a deed by making advance payment of $500.00 of principal on the promissory note. The property shall be conveyed subject to the Restrictive Covenants shown on the reverse side of this contract. Seller shall pay all ad valorem taxes through 19_96_. Ad valorem taxes shall be prorated on a calendar year basis as of the date of title transfer. Buyer will pay all closing costs.

POSSESSION OF THE PROPERTY: Commencing on the date of the execution of the contract and continuing for so long as the Buyer complies with all of the conditions of the same, Buyer shall have the exclusive right of possession of the above described property, and shall have the right to make such improvements thereto as he may desire, provided however, during his occupancy of the property, Buyer shall make no unlawful or offensive use of the same, and provided further that the Buyer shall in all respects comply with the Restrictive Covenants applicable to such property as set out on the reverse side. It is further specifically understood that the cutting and removal of timber trees from the property is prohibited unless written consent is first obtained from Seller, but Buyer may cut and remove sufficient trees for the construction of a dwelling or to locate a mobile home and customary outbuildings and to provide normal access thereto.

BREACH AND LIQUIDATED DAMAGES: If Buyer shall fail to pay the first 6 installments when due, shall fail to sign and return the necessary closing documents for delivery of title, or shall fail to perform any other condition of this contract, then upon 10 days written notice, mailed postage prepaid to the Buyer at his address shown below, Seller may cancel this contract and retake possession of the property and retain as liquidated damages all of the sums paid to it by the Buyer.

ACKNOWLEDGMENT OF INSPECTION OF THE PROPERTY: Buyer acknowledges and certifies that he has made a personal on-site inspection of the property.

Witness our hands and seals, this the day and year first above written.

FRANKLIN SIS CORPORATION, Seller

By: _John W. Franklin_            _Roy R. Carpenter_ (SEAL), Purchaser

_____ (SEAL), Purchaser

Address of Purchaser:

_____

SATISFACTION: The debt evidenced by this Note has been satisfied in full this _____ day of _____, 19__
Signed: _____

EXHIBIT B

# PROMISSORY NOTE

Oxford _____, N.C.

April 15 , 1997

$ 90,615.00

FOR VALUE RECEIVED the undersigned, jointly and severally, promise to pay to _____

Franklin SIS Corporation, a North Carolina Corporation

_____ or order,

the principal sum of ___Ninety Thousand Six Hundred Fifteen & No/100—

DOLLARS ($ 90,615.00 ), with interest from date , at the rate of eight and one-half

per cent ( 8.5 %) per annum on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at

the office of Franklin SIS Corporation

111 Hilton Avenue, Durham, N.C. 27707

or at such place as the legal holder hereof may designate in writing. It is understood and agreed that additional amounts may be advanced by the holder hereof as provided in the instruments, if any, securing this Note and such advances will be added to the principal of this Note and will accrue interest at the above specified rate of interest from the date of advance until paid. The principal and interest shall be due and payable as follows:

    360 Equal monthly installments of $696.67 each, the first payment
    to be due and payable on or before the 1st day of May, 1997, and
    on the same day of each month thereafter until said principal and
    interest have been paid in full.

If not sooner paid, the entire remaining indebtedness shall be due and payable on _____ April 1997 _____

If payable in installments, each such installment shall, unless otherwise provided, be applied first to payment of interest then accrued and due on the unpaid principal balance, with the remainder applied to the unpaid principal.

Unless otherwise provided, this Note may be prepaid in full or in part at any time without penalty or premium. Partial prepayments shall be applied to installments due in reverse order of their maturity.

In the event of (a) default in payment of any installment of principal or interest hereof as the same becomes due and such default is not cured within ___(10) days from the due date, or (b) default under the terms of any instrument securing this Note, and such default is not cured within fifteen (15) days after written notice to maker, then in either such event the holder may without further notice, declare the remainder of the principal sum, together with all interest accrued thereon and, the prepayment premium, if any, at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The unpaid principal of this Note and any part thereof, accrued interest and all other sums due under this Note and the Deed of Trust,

if any, shall bear interest at the rate of _____ eight and one-half _____ per cent ( 8.5 %) per annum after default until paid.

All parties to this Note, including maker and any sureties, endorsers, or guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note and the Deed of Trust notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

Upon default the holder of this Note may employ an attorney to enforce the holder's rights and remedies and the maker, principal, surety, guarantor and endorsers of this Note hereby agree to pay to the holder reasonable attorney's fees not exceeding a sum equal to fifteen percent (15%) of the outstanding balance owing on said Note, plus all other reasonable expenses incurred by the holder in exercising any of the holder's rights and remedies upon default. The rights and remedies of the holder as provided in this Note and any instrument securing this Note shall be cumulative and may be pursued singly, successively, or together against the property described in the Deed of Trust or any other funds, property or security held by the holder for payment or security, in the sole discretion of the holder. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

This Note is to be governed and construed in accordance with the laws of the State of North Carolina.

This Note is given for purchase of real property , and is secured by a

Purchase Money Deed of Trust of even date herewith to T. S. Royster, Jr., Trustee,

which is a first lien upon the property therein described.

IN TESTIMONY WHEREOF, each corporate maker has caused this instrument to be executed in its corporate name by its

_____ President, attested by its

_____ Secretary, and its corporate seal to be hereto affixed, all by order of its Board of Directors first duly given, the day and year first above written.

_____(Corporate Name)_____

By: _____

_____ President

ATTEST:

_____ Secretary (Corporate Seal)

_____(Corporate Name)_____

By: _____

_____ President

ATTEST:

_____ Secretary (Corporate Seal)

IN TESTIMONY WHEREOF, each individual maker has hereunto set his hand and adopted as his seal the word "SEAL" appearing beside his name, the day and year first above written.

Benny A. Carpenter _____ (SEAL)
Benny A. Carpenter

Roy R. Carpenter, Jr. _____ (SEAL)
Roy R. Carpenter, Jr.

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

N.C. Bar Assn. Form No. 4 © 1976, Revised © 1985    Printed by Agreement with the N.C. Bar Assn.    'Poole Printing Co., Inc. P.O. Box 58487, Raleigh, N.C. 27658/

0714  0658

EXHIBIT C

KATHRYN CREWS
REGISTER OF DEEDS
GRANVILLE COUNTY, NC

FILED:
DATE: *April 17, 1997*
TIME: *4:40 P.M.*
BOOK: *714*
PAGE: *658*

SATISFACTION: The debt secured by the within Deed of Trust together
with the note(s) secured thereby has been satisfied in full.
This the _____ day of _____, 19 ___
Signed: _____

Recording: Time, Book and Page

Tax Lot No. _____ Parcel Identifier No. _____

Verified by _____ County on the _____ day of _____, 19 ___

by _____

Mail after recording to    Franklin SIS Corporation

c/o John W. Franklin, 111 Hilton Avenue, Durham, N.C. 27707

This instrument prepared by    Royster, Royster & Cross, LLP - TSR, jr.

Brief Description for the index    Lot #5, 3.2928 A, MB 19/55, Tally Ho Twnp.

## NORTH CAROLINA DEED OF TRUST

THIS DEED of TRUST made this 15th day of    April    , 19 97, by and between:

| GRANTOR | TRUSTEE | BENEFICIARY |
|---|---|---|
| PENNY A. CARPENTER and Husband, ROY R. CARPENTER, JR. | T. S. ROYSTER, JR. | FRANKLIN SIS CORPORATION, a North Carolina Corporation |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor, Trustee, and Beneficiary as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of _____
---Ninety Thousand Six Hundred Fifteen & No/100--- Dollars ($ 90,615.00 )
as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference. The final due date for payment of said Promissory Note, if not sooner paid, is    April 2027

NOW, THEREFORE, as security for said indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys fees as provided in the Promissory Note) and other valuable consideration, the receipt of which is hereby acknowledged, the Grantor has bargained, sold, given, granted and conveyed and does by these presents bargain, sell, give, grant and convey to said Trustee, his heirs, or successors, and assigns, the parcel(s) of land situated in the City of _____, _____ Tally Ho _____ Township,
Granville    County, North Carolina, ( the "Premises") and more particularly described as follows:

A certain lot or parcel of land lying and being situate in Tally Ho Township, Granville County, N.C., on south side of S.R. #1132, containing 3.2928 acres, more or less, and being designated as Lot #5 on map of the Lots of Franklin SIS Corp., made by James R. Wilson, R.L.S., July 25, 1996, recorded in Map Book 19, page 55, Granville County Registry. (9341 – No Title Certification)

THIS IS A PURCHASE MONEY DEED OF TRUST

Assoc. Form 5 © 1976, Revised © September 1985 • Printed by Agreement with the N. C. Bar Assoc. — 1981 • James Williams & Co., Inc. • Box 127 • Yadkinville, NC 27055

0714  0659

TO HAVE AND TO HOLD said Premises with all privileges and appurtenances thereunto belonging, to said Trustee, his heirs, successors, and assigns forever, upon the trusts and for the uses hereinafter set forth.

If the Grantor shall pay the Note secured hereby in accordance with its terms, together with interest thereon, and any renewals or extensions thereof in whole or in part, all other sums secured hereby and shall comply with all of the covenants, terms and conditions of this Deed of Trust, then this conveyance shall be null and void and may be cancelled of record at the request and the expense of the Grantor. If, however, there shall be any default in the payment of any sums due under the Note, this Deed of Trust or any other instrument securing the Note and such default is not cured within ten (10) days from the due date, or if there shall be default in any of the other covenants, terms or conditions of the Note secured hereby, or any failure or neglect to comply with the covenants, terms or conditions contained in this Deed of Trust or any other instrument securing the Note and such default is not cured within fifteen (15) days after written notice, then and in any of such events, without further notice, it shall be lawful for and the duty of the Trustee, upon request of the Beneficiary, to sell the land herein conveyed at public auction for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such and any resales and upon compliance with the law then relating to foreclosure proceedings under power of sale to convey title to the purchaser in fee simple.

...

750.00

provisions hereof and otherwise as required by then existing law relating to foreclosures. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale or the minimum sum of $

And the said Grantor doth hereby covenant and agree with the Trustee as follows:

1. INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against loss by fire, windstorm and such other casualties and contingencies...

2. TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises...

3. ASSIGNMENTS OF RENTS AND PROFITS...

4. PARTIAL RELEASE...

5. WASTE...

6. CONDEMNATION...

7. WARRANTIES...

8. SUBSTITUTION OF TRUSTEE...

9. SALE OF PREMISES...

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal...

(Corporate Name)                                  Penny A. Carpenter (SEAL)

By: _____

_____ President                          Roy R. Carpenter, Jr. (SEAL)

ATTEST:

_____ Secretary (Corporate Seal)                 (SEAL)

NORTH CAROLINA, GRANVILLE County.
I, a Notary Public of the County and state aforesaid, certify that Penny A. Carpenter & Roy R. Carpenter Jr.
Penny A. Carpenter and Roy R. Carpenter, Jr. Grantor, personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this 16 day of April, 19 97.
My Commission expires: 11-19-2001           Patricia J. Dresham Notary Public

STATE OF NORTH CAROLINA, GRANVILLE COUNTY.
The foregoing certificate(s) of Patricia J. Dresham a Notary Public of Granville County, N.C. is (are) certified to be correct.

This instrument was presented for registration this day and hour and duly recorded in the office of the Register of Deeds of Granville County, N.C., in Book 714, Page 658.
This 17th day of April, A.D. 19 97 at 4:40 o'clock P.M.
Recorded and verified: Kathleen Crews Register of Deeds By Becky E. Gooch Assistant/Deputy Register of Deeds
$14.00 Rec. Fee $ _____ Stamps

N. C. Bar Assoc. Form No. 5 © 1976, Revised © September 1985

(Page 1 of 2)

Book 0714    Page 0656

EXHIBIT D

NORTH CAROLINA

GRANVILLE COUNTY

THIS DEED, made this the 17th day of April, 1997, by FRANKLIN SIS CORPORATION, a North Carolina Corporation, by and through its Attorney-in-Fact, JOHN W. FRANKLIN, Grantor, to PENNY A. CARPENTER and Husband, ROY R. CARPENTER, JR., Grantee; (2008 Sanders Road, Stem, N.C. 27581)

WITNESSETH:

That the said Grantor, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey to the said Grantee, as tenants by the entirety, their assigns, and to the survivor, his or her heirs and assigns, a certain tract or parcel of land situate in Granville County, North Carolina, and more particularly described as follows:

A certain lot or parcel of land lying and being situate in Tally Ho Township, Granville County, N.C., on south side of S.R. #1132, containing 3.2928 acres, more or less, and being designated as Lot #5 on map of the Lots of Franklin SIS Corp., made by James R. Wilson, R.L.S., July 25, 1996, recorded in Map Book 19, page 55, Granville County Registry. (934) – No Title Certification)

TO HAVE AND TO HOLD the aforesaid tract or parcel of land, and all privileges and appurtenances thereto belonging, to the said Grantee as tenants by the entirety, their assigns, and to the survivor, his or her heirs and assigns, in fee simple forever.

And the said Grantor covenants with said Grantee that he is seized of said premises in fee and has the right to convey in fee simple, that the same is free and clear from all encumbrances, and that it does hereby warrant and will forever defend the title to the same against the claims of all persons whomsoever.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

HOPKINS, ROBERTS
& CROSS, LLP
ATTORNEYS AT LAW
OXFORD, N. C.

(Page 2 of 2)

Book      Page
0714    0657

IN WITNESS WHEREOF, the Grantor has caused this instrument to be signed in its

corporate name by its Attorney-in-Fact, the day and year first above written.

FRANKLIN SIS CORPORATION

By _____
John W. Franklin, Attorney-in-Fact

NORTH CAROLINA

GRANVILLE COUNTY

I, a Notary Public in and for the State and County aforesaid, do hereby certify
that John W. Franklin, Attorney-in-Fact for Franklin SIS Corporation, a North Carolina
Corporation, personally appeared before me this day and acknowledged the due execution of
the foregoing deed by him as Attorney-in-Fact for said party.

For authority of said Attorney-in-Fact, see Power of Attorney of record in
Book 564, at page 478, Granville County Registry.

Witness my hand and notarial seal, this the 17th day of April, 1997.

_____
Notary Public

My commission expires: 5-21-01

STATE OF NORTH CAROLINA, GRANVILLE COUNTY
The foregoing certificate of _____, a Notary Public
of ___Granville County, N.C.___
is certified to be correct. This instrument was presented for
registration and filed in this office in Book 714, Page 656
This 17th day of April 1997 at 8 o'clock P.M.
Register of Deeds _____
By _____ Assistant Deputy

# 10.00
# 20.00

Royster, Royster
& Cross, LLP
ATTORNEYS AT LAW
OXFORD, N. C.

EXHIBIT E

Doc ID: 002420370002 Type: CAP
Recorded: 10/07/2009 at 11:17:22 AM
Fee Amt: $22.00 Page 1 of 2
Excise Tax: $0.00
Granville County, NC
Kathy M. Adcock Reg of Deeds
BK 1329 PG 400-401

This certifies that there are no delinquent ad valorem
taxes, or other taxes which the Granville County Tax
Collector is charged with collecting, that are a lien on:
(parcel) 0706022 04712
Parcel Identification Number: 0706022 04712
This is not a certification that the Granville County
Parcel Identification Number matches the deed
description.
BSL (signature) 10-7-09
Tax Collector Staff Signature

PREPARED BY & RETURN TO: Royster, Cross & Currin, LLP (DHD/mlc) P. O. Drawer 1168, Oxford, NC 27565
No STAMPS

STATE OF NORTH CAROLINA

COUNTY OF GRANVILLE                          GENERAL WARRANTY DEED

THIS DEED made this the 20th day of May, 2003, by and between PENNY A.
CARPENTER and husband, ROY R. CARPENTER, JR., Grantors, to FRANKLIN SIS
CORPORATION, a North Carolina Corporation, Grantee (111 Hilton Avenue, Durham,
North Carolina 27707);

W I T N E S S E T H :

THAT the said Grantors, for the sum of TEN DOLLARS ($10.00) and other good and
valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and
by these presents does give, grant, bargain, sell and convey to the said Grantee, a certain tract or
parcel of land situate in Tally Ho Township, Granville County, North Carolina, and more
particularly described as follows:

A certain lot or parcel of land lying and being situate in Tally Ho Township,
Granville County, N.C., on south side of S.R. #1132, containing 3.0928 acres,
more or less, and being designated as Lot #5 on map of the Lots of Franklin SIS
Corp., made by James R. Wilson, R.L.S., July 25, 1996, recorded in Map Book
19, page 55, Granville County Registry. (9341 – No Title Certification)

TO HAVE AND TO HOLD the aforesaid tract or parcel of land and all privileges and
appurtenances thereto belonging to the Grantee in fee simple.

And the Grantors covenants with the Grantee, that Grantors are seized of the premises in fee
simple, have the right to convey the same in fee simple, that title is marketable and free and clear of
all encumbrances, and that Grantors will warrant and defend the title against the lawful claims of all
persons whomsoever.

The designation Grantors and Grantee as used herein shall include said parties, their heirs,
successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required

ROYSTER, CROSS & CURRIN, LLP, Attorneys at Law, P.O. Drawer 1168, Oxford, NC 27565

Book:1329,Page:400

(Page 2 of 2)

by context.

IN WITNESS WHEREOF, the Grantors have hereunto set their hands and seals, the day and year first above written.

_Penny A. Carpenter_ (SEAL)
Penny A. Carpenter

_Roy R. Carpenter_ (SEAL)
Roy R. Carpenter

NORTH CAROLINA

GRANVILLE COUNTY

I, _ROBIN W. DUBLIN_, a Notary Public, in and for the State and County aforesaid, do hereby certify that Penny A. Carpenter and Roy R. Carpenter personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and Notarial Seal, this the _20th_ day of May, 2003.

_Robin W. Dublin_
Notary Public

My commission expires: _April 2, 2008_

ROYSTER, CROSS & CURRIN, LLP, Attorneys at Law, P.O. Drawer 1168, Oxford, NC 27565

Book:1329,Page:400

# EXHIBIT F

**FRANKLIN SIS CORPORATION**
111 Hilton Avenue
Durham, NC 27707

(919) 489-3888

THIS CONTRACT OF PURCHASE AND SALE made and entered into this the _27_ day of _MAY_, 200_3_, by and between FRANKLIN SIS CORPORATION, a North Carolina Corporation, (Seller), and _PENNY A + ROY R CARPENTER JR_ (Buyer); Subject to the terms and conditions set out below and on the reverse side of this contract, Seller has contracted to sell to the Buyer, and the Buyer has contracted to purchase from the Seller, a certain lot in Tally Ho Township, Granville County, North Carolina, containing _3.2928_ acres, a description of said lot being hereto attached.

The terms and conditions of this sale and purchase are as follows:

PURCHASE PRICE: The Buyer agrees to pay the Seller the sum of $ _120,432.5_ as the purchase price for the property, of which $ _0_ is being paid at the time of execution of this contract. The remaining sum of $ _120,432.5_ with interest thereon at _11_ % per annum (ANNUAL PERCENTAGE RATE), shall be amortized and paid in _207_ equal monthly installments of $ _1,300.00_ beginning on the _1_ day of _JUNE_, 200_3_, and continuing on the same day of each calendar month thereafter until all principal and accumulated interest have been paid in full. Installments paid shall be credited first to interest and the balance to the reduction of principal. The balance of the purchase price shall be evidenced by a promissory note secured by a purchase money deed of trust on the property.

DELIVERY OF TITLE: Title shall be conveyed by general warranty deed to be delivered and recorded after the Buyer has made 6 monthly payments. Buyer may also demand and receive a deed by making advance payment of $500.00 of principal on the promissory note. The property shall be conveyed subject to the Restrictive Covenants shown on the reverse side of this contract. Seller shall pay all ad valorem taxes through 200___. Ad valorem taxes shall be prorated on a calendar basis as of the date of title transfer. Buyer will pay all closing costs.

POSSESSION OF THE PROPERTY: Commencing on the date of the execution of this contract and continuing for so long as the Buyer complies with all of the conditions of the same, Buyer shall have the exclusive right of possession of the above described property, and shall have the right to make such improvements thereto as he may desire, provided however, during his occupancy of the property, Buyer shall make no unlawful or offensive use of the same, and provided further that the Buyer shall in all respects comply with the Restrictive Covenants applicable to such property as set out on the reverse side. It is further specifically understood that the cutting and removal of timber trees from the property is prohibited unless written consent is first obtained from Seller, but Buyer may cut and remove sufficient trees for the construction of a dwelling or to locate a mobile home and customary outbuildings and to provide normal access thereto.

BREACH AND LIQUIDATED DAMAGES: If Buyer shall fail to pay the first 6 installments when due, shall fail to sign and return the necessary closing documents for delivery of title, or shall fail to perform any other condition of this contract, then upon 10 days written notice, mailed postage prepaid to the Buyer at his address shown below, Seller may cancel this contract and retake possession of the property and retain as liquidated damages all of the sums paid to it by the Buyer.

ACKNOWLEDGMENT OF INSPECTION OF THE PROPERTY: Buyer acknowledges and certifies that he has made a personal on-site inspection of the property.

Witness our hands and seals, this the day and year first above written.

FRANKLIN SIS CORPORATION

By _John W. Franklin_ (Seal), Seller        _____ (Purchaser)

_____ (Purchaser)

Address of Purchaser: _____

Home Phone: (___) _____   Work Phone: (___) _____   Soc Sec No _____

DO WE HAVE YOUR PERMISSION TO CHECK YOUR CREDIT? _____

SIS
COPY

# EXHIBIT G

FRANKLIN SIS CORPORATION
111 Hilton Avenue
Durham, NC 27707

(919) 489-3888

THIS CONTRACT OF PURCHASE AND SALE made and entered into this the _11_ day of _MAY_ , 200 _7_ , by and between FRANKLIN SIS CORPORATION, a North Carolina Corporation; (Seller), and _PENNY A + ROY R. CARPENTER_ (Buyer): Subject to the terms and conditions set out below and on the reverse side of this contract, Seller has contracted to sell to the Buyer, and the Buyer has contracted to purchase from the Seller, a certain lot in Tally Ho Township, Granville County, North Carolina, containing _2.2928_ acres, a description of said lot being hereto attached.
3.2928

The terms and conditions of this sale and purchase are as follows:

PURCHASE PRICE: The Buyer agrees to pay the Seller the sum of $ _121,951.92_ as the purchase price for the property, of which $ _—O—_ is being paid at the time of execution of this contract. The remaining sum of $ _121,951.92_, with interest thereon at _11_ % per annum (ANNUAL PERCENTAGE RATE), shall be amortized and paid in _210_ equal monthly installments of $ _1310.00_ beginning on the _17_ day of _MAY_ , 200 _7_ , and continuing on the same day of each calendar month thereafter until all principal and accumulated interest have been paid in full. Installments paid shall be credited first to interest and the balance to the reduction of principal. The balance of the purchase price shall be evidenced by a promissory note secured by a purchase money deed of trust on the property.

DELIVERY OF TITLE: Title shall be conveyed by general warranty deed to be delivered and recorded after the Buyer has made 6 monthly payments; Buyer may also demand and receive a deed by making advance payment of $500.00 of principal on the promissory note. The property shall be conveyed subject to the Restrictive Covenants shown on the reverse side of this contract. Seller shall pay all ad valorem taxes through 200 _6_ . Ad valorem taxes shall be prorated on a calendar basis as of the date of title transfer. Buyer will pay all closing costs.

POSSESSION OF THE PROPERTY: Commencing on the date of the execution of this contract and continuing for so long as the Buyer complies with all of the conditions of the same, Buyer shall have the exclusive right of possession of the above described property, and shall have the right to make such improvements thereto as he may desire, provided however, during his occupancy of the property, Buyer shall make no unlawful or offensive use of the same, and provided further that the Buyer shall in all respects comply with the Restrictive Covenants applicable to such property as set out on the reverse side. It is further specifically understood that the cutting and removal of timber trees from the property is prohibited unless written consent is first obtained from Seller, but Buyer may cut and remove sufficient trees for the construction of a dwelling or to locate a mobile home and customary outbuildings and to provide normal access thereto.

BREACH AND LIQUIDATED DAMAGES: If Buyer shall fail to pay the first 6 installments when due, shall fail to sign and return the necessary closing documents for delivery of title, or shall fail to perform any other condition of this contract, then upon 10 days written notice, mailed postage prepaid to the Buyer at his address shown below, Seller may cancel this contract and retake possession of the property and retain as liquidated damages all of the sums paid to it by the Buyer.

ACKNOWLEDGMENT OF INSPECTION OF THE PROPERTY: Buyer acknowledges and certifies that he has made a personal on-site inspection of the property.

Witness our hands and seals, this the day and year first above written.

FRANKLIN SIS CORPORATION

By: _John W. Franklin_ (Seal), Seller    X _Penny Carpenter_ (Purchaser)

_____ (Purchaser)

Address of Purchaser: _2008 SANDERS RD  LOT #5 @ SR 1132_

Home Phone: (__)_____  Work Phone: (__)_____  Soc Sec No.▮▮▮▮▮

DO WE HAVE YOUR PERMISSION TO CHECK YOUR CREDIT? ____

MAY 11 2007 REVISED
117,608.77
4,343.15  CHECK HOLDING SINCE
#121,951.92    APRIL 2005
CK # 623,641

EXHIBIT H

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT Eastern District of North Carolina | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Roy Randolph Carpenter Jr.<br>Penny Averette Carpenter | Case Number:  09-03678 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Franklin SIS Corporation | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>Franklin SIS Corporation<br>111 Hilton Ave.<br>Durham, NC 27707-2160<br><br><br><br>Telephone number: | Court Claim Number:_____<br>*(If known)*<br><br><br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:     $ 131,445.28 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

| 2. Basis for Claim:  __land sale contract__<br>    (See instruction #2 on reverse side.) |
|---|

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

3. Last four digits of any number by which creditor identifies debtor:  4-LH

   3a. Debtor may have scheduled account as:  LTD-DOT
       (See instruction #3a on reverse side.)

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:  Lot and mobile home, Stem, NC

Value of Property: $135,000.00 Annual Interest Rate __% 9.5%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ 6,250.00  Basis for perfection:  contract

Amount of Secured Claim: $131,445.28  Amount Unsecured: $ N/A

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 8-3-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  *[signature]*  Attorney | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

030040

SIS
COPY

FRANKLIN SIS CORPORATION
111 Hilton Avenue
Durham, NC 27707

(919) 489-3888

THIS CONTRACT OF PURCHASE AND SALE made and entered into this the _11_ day of _MAY_, 200 _7_, by and between FRANKLIN SIS CORPORATION, a North Carolina Corporation, (Seller), and _PENNY A + ROY R. CARPENTER_ (Buyer) ; Subject to the terms and conditions set out below and on the reverse side of this contract, Seller has contracted to sell to the Buyer, and the Buyer has contracted to purchase from the Seller, a certain lot in Tally Ho Township, Granville County, North Carolina, containing _2.2928_ acres, a description of said lot being hereto attached. _3.2928_

The terms and conditions of this sale and purchase are as follows:

PURCHASE PRICE: The Buyer agrees to pay the Seller the sum of $ _121,951.92_ as the purchase price for the property, of which $ _-0-_ is being paid at the time of execution of this contract. The remaining sum of $ _121,951.92_, with interest thereon at _11_ % per annum (ANNUAL PERCENTAGE RATE), shall be amortized and paid in _210_ equal monthly installments of $ _1310.00_ beginning on the _17_ day of _MAY_, 200 _7_, and continuing on the same day of each calendar month thereafter until all principal and accumulated interest have been paid in full. Installments paid shall be credited first to interest and the balance to the reduction of principal. The balance of the purchase price shall be evidenced by a promissory note secured by a purchase money deed of trust on the property.

DELIVERY OF TITLE: Title shall be conveyed by general warranty deed to be delivered and recorded after the Buyer has made 6 monthly payments. Buyer may also demand and receive a deed by making advance payment of $500.00 of principal on the promissory note. The property shall be conveyed subject to the Restrictive Covenants shown on the reverse side of this contract. Seller shall pay all ad valorem taxes through 200 _6_ . Ad valorem taxes shall be prorated on a calendar basis as of the date of title transfer. Buyer will pay all closing costs.

POSSESSION OF THE PROPERTY: Commencing on the date of the execution of this contract and continuing for so long as the Buyer complies with all of the conditions of the same, Buyer shall have the exclusive right of possession of the above described property, and shall have the right to make such improvements thereto as he may desire, provided however, during his occupancy of the property, Buyer shall make no unlawful or offensive use of the same, and provided further that the Buyer shall in all respects comply with the Restrictive Covenants applicable to such property as set out on the reverse side. It is further specifically understood that the cutting and removal of timber trees from the property is prohibited unless written consent is first obtained from Seller, but Buyer may cut and remove sufficient trees for the construction of a dwelling or to locate a mobile home and customary outbuildings and to provide normal access thereto.

BREACH AND LIQUIDATED DAMAGES: If Buyer shall fail to pay the first 6 installments when due, shall fail to sign and return the necessary closing documents for delivery of title, or shall fail to perform any other condition of this contract, then upon 10 days written notice, mailed postage prepaid to the Buyer at his address shown below, Seller may cancel this contract and retake possession of the property and retain as liquidated damages all of the sums paid to it by the Buyer.

ACKNOWLEDGMENT OF INSPECTION OF THE PROPERTY: Buyer acknowledges and certifies that he has made a personal on-site inspection of the property.

Witness our hands and seals, this the day and year first above written.

FRANKLIN SIS CORPORATION

By: _John W. Franklin_ (Seal), Seller X _Penny Carpenter_ (Purchaser)

_____ (Purchaser)

Address of Purchaser: _2008 SANDERS RD   LOT #5 @ SR 1132_

Home Phone: (___)_____   Work Phone: (___)_____   Soc Sec No ████████████

DO WE HAVE YOUR PERMISSION TO CHECK YOUR CREDIT? _____

MAY 11 2007 REVISED
    117,608.77
    4,343.15  CHECK HOLDING SINCE
$121,951.92         APRIL 2005
                CK # 623,641

## LOAN REINSTATEMENT CALCULATION

| COMPANY |
|---|
| Franklin SIS Corporation<br>111 Hilton Ave.<br>Durham NC 27707<br>(919) 528-2198 |

| ACCOUNT NO. | 4-LH |
|---|---|
| STATEMENT DATE | 5/12/2009 |

**SUMMARY**

| | |
|---|---|
| Unpaid Installments | $6,250 00 |
| Accrued Late Charges | $217 80 |
| Unpaid Late Charges | $130 68 |
| Unpaid Charges | $0 00 |
| Unpaid Interest | $0 00 |
| **To Reinstate as of**<br>**05/12/2009, Please Pay:** | $6,598.48 |

| BORROWER |
|---|
| ROY R. CARPENTER JR.<br>P.O. BOX 314<br>STEM NC 27581 |

*PLEASE DETACH THE TOP PORTION OF THIS STATEMENT AND RETURN IT WITH YOUR PAYMENT*

### ITEMIZATION OF UNPAID INSTALLMENTS

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Apply To Trust | Other | Unpaid Interest | Principal Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Balance Forward: | $131 445 28 |
| 12/27/2008 | 9 500 | $1,250 00 | $48 39 | $1,040 61 | $0.00 | $161 00 | $0 00 | $131 396 89 |
| 01/27/2009 | 9 500 | $1 250 00 | $48 77 | $1,040 23 | $0.00 | $161 00 | $0 00 | $131 348 12 |
| 02/27/2009 | 9 500 | $1,250 00 | $49 16 | $1 039 84 | $0.00 | $161 00 | $0 00 | $131 298 96 |
| 03/27/2009 | 9 500 | $1 250 00 | $49 55 | $1,039 45 | $0.00 | $161 00 | $0 00 | $131 249 41 |
| 04/27/2009 | 9 500 | $1,250 00 | $49 94 | $1,039 06 | $0.00 | $161 00 | $0 00 | $131,199 47 |
| | | $6,250.00 | $245.81 | $5,199.19 | $0.00 | $805.00 | $0.00 | |

## CERTIFICATE OF SERVICE

I, Joseph A. Bledsoe, III, of the Law Offices of John T. Orcutt, P.C., do hereby certify that I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age; and that on this day, I served copies of the foregoing **BRIEF OF DEBTORS REGARDING OBJECTION TO CLAIM OF FRANKLIN SIS CORPORATION** upon the following parties:

> Dale W. Hensley
> ROYSTER, CROSS & HENSLEY, LLP
> Attorney for Franklin SIS Corporation
> P. O. Drawer 1168
> 135 College Street
> Oxford, NC 27656

> John F. Logan
> Chapter 13 Trustee
> P. O. Box 61039
> Raleigh, NC 27661-1039

Unless **automatic electronic noticing** was indicated on the confirmation provided by the Court upon the filing of said documents, service was accomplished by regular, U.S. mail, first-class postage pre-paid.

It is under penalty of perjury that I certify the foregoing to be true and correct.

DATE: January 21, 2010

**Law Offices of John T. Orcutt, P.C. by**

s./ Joseph A. Bledsoe, III
Joseph A. Bledsoe, III