UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN THE MATTER OF: | CASE NUMBER: |
| **Roy Randolph Carpenter, Jr.**<br>**Penny Averette Carpenter**<br>Mailing Address:<br>2008 Sanders Road<br>Stem, NC 27851<br>Debtors. | **09-03678-8-SWH**<br><br><br><br><br>Chapter 13 |

# BRIEF OF FRANKLIN SIS REGARDING
# DEBTORS' OBJECTION TO CLAIM

Dale W. Hensley, Attorney at Law
135 College Street
Oxford NC 27565
(919)-693-3131
Fax: (919) 693-8014
dhensley@roystercross.com
NC State Bar No.: 25556

## TABLE OF CONTENTS

    **Page**

TABLE OF CASES ................................................................................................ i

TABLE OF STATUTES ........................................................................................ i

I.    STATEMENT OF JURISDICTION AND VENUE ........................ 1

II.    STATEMENT OF THE ISSUES ........................................................ 1

III.    STATEMENT OF THE FACTS ......................................................... 1

IV.    ARGUMENT ....................................................................................... 3

**The deed of trust executed and recorded in 1997 should be allowed as a basis for granting Franklin the status of a secured creditor in that the deed of trust was not affected by the execution of the deed purporting to convey the property to Franklin, and the promissory note secured by the 1997 deed of trust was never cancelled or otherwise satisfied.**

V.  CONCLUSION ............................................................................................... 5

## TABLE OF CASES

*Washington Furniture Company v. Potter,*
(188 N.C. 145, 146-47, 124 S.E. 122, 123 (1924) ................................................ 3

## TABLE OF STATUTES

U.S.C. § 157(b)(1) ................................................................................................ 1

U.S.C. § 1408(1) .................................................................................................. 1

28 U.S.C. § 157(b)(2)(B) *et seq.* ........................................................................ 1

N.C.G.S. § 25-3-604 ............................................................................................ 5

## STATEMENT OF JURISDICTION AND VENUE

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1). Venue is proper under 28 U.S.C. § 1408(1), and this is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B), (b)(2)(K) and/or (b)(2)(0).

### I.   STATEMENT OF THE ISSUE(S)

Whether or not the claim submitted against the Debtors by Franklin SIS Corporation is secured by a lien against certain real property located in Granville County, North Carolina.

### II.   STATEMENT OF THE FACTS

Franklin SIS is the business entity through which John W. Franklin (hereinafter collectively "Franklin" or "Mr. Franklin") engages in various property sales and financing transactions with individuals, most of whom do not qualify for standard bank loans for various reasons. Mr. Franklin is 84 years old and has had a business relationship with the debtors in this matter for a number of years. The issues before this Court arose originally from a land-sale and financing agreement between the debtors in this matter and Franklin. In the agreement Franklin promised to convey real property to the debtors and to finance the arrangement. The agreement is a fill-in-the-blank form that Mr. Franklin has used for a number of real estate deals. The original intent of the form was to provide a mechanism to quickly allow a purchaser to enter into possession of the property and for Franklin to avoid the time and costs involved in a traditional sale and purchase money mortgage in the event the buyer were to default shortly after taking possession. This form is considered particularly useful when conveying property to high-risk borrowers who cannot obtain traditional financing.

The transaction went as planned and the parties entered into the second phase of the agreement, which was a traditional sale and purchase money financing arrangement. However, the debtors began

1

experiencing financial difficulties at some point after they had been living in the property for a while and eventually defaulted on the agreement by failing to make their payments as scheduled.  During this time they filed two separate petitions for relief under Chapter Seven of the United States Bankruptcy Code, eventually obtaining a discharge in 1999.  In 2003, the debtors again began experiencing financial difficulties and executed a general warranty deed for the property to Franklin.  The parties did not intend this to be an absolute conveyance but merely to provide additional security for the promise to repay Franklin.  The debtors never relinquished possession of the property, and the deed was not recorded in the county registry, but was placed in the debtor's file by Mr. Franklin.  Shortly after the execution of the deed, Franklin and the debtors executed what purported to be another land-sale contract for the same property.  This was the first of a number of such agreements entered into the between the parties when the debtors would fall behind in their payments or would ask for additional sums of money for other things.

     The debtors filed the most recent petition under Chapter 13 of the United States Bankruptcy Code.  Franklin filed a claim with the trustee for the amount owed under the latest iteration of the so called land sale agreement and attached a copy of the agreement to the claim.  Franklin was informed by the trustee's office that there was a problem with his claim in that the debtor had scheduled the claim as a secured note and deed of trust, and the trustee was not aware of any land-sale agreement.  In order to properly support the claim and begin receiving payments from the trustee under the plan, Franklin caused the 2003 deed to be recorded in the county registry.

2

# IV. ARGUMENT

**The deed of trust executed and recorded in 1997 should be allowed as a basis for granting Franklin the status of a secured creditor in that the deed of trust was not affected by the execution of the deed purporting to convey the property to Franklin, and the promissory note secured by the 1997 deed of trust was never cancelled or otherwise satisfied.**

Because the 2003 deed is subordinate to the bankruptcy estate, the issue for the Court to decide in this matter is whether or not the 1997 deed of trust secures Franklin's claim, at least to some degree, or if the security instruments had been invalidated by the subsequent course of dealing between the parties. The primary question for this matter is whether the security interest held by Franklin by reason of the 1997 deed of trust merged with the fee simple it purportedly obtained when the debtors executed the 2003 deed, thus leaving the bankruptcy estate with legal title free and clear of the lien.

The answer to this depends upon whether or not the deed was in fact as an absolute conveyance, or whether or not it was merely a means of attempting to provide additional security to Franklin to allow the debtors in remain in their home and avoid a foreclosure. If it was intended as merely security for the transaction that had already taken place, then in 1997 note and deed of trust should remain as a valid security interest that is enforceable against the bankruptcy estate.

The North Carolina State Courts have resolved this issue in the line of cases dealing with the question of merger, where a secured party obtains a deed from the borrower. A commonly referenced case regarding that question is *Washington Furniture Company v. Potter.*

> It is undoubtedly the general rule of law that where one who holds a mortgage on real estate becomes the owner of the fee, and the two estates are thus united in the same person, ordinarily the former estate merges in the latter. *Hutchins v. Carleton*, 19 N.H., 487. The equitable or lesser

3

estate is said to be swallowed up, or "drowned out," by the legal or greater interest. But this rule does not apply where such merger would be inimical to the interests of the owner, as, for example, where it would prevent his setting up the mortgage to defeat an intermediate title - such as a subsequent lien or a second mortgage, as in the instant case - unless the parties intended otherwise; and this intention will not be presumed contrary to the apparent interests of the owner. *Hines v. Ward*, 121 Cal., 115; Jones on Mortgages, sec. 870; 19 R.C.L., 484; Note: 39 L.R.A. (N. S.), 834, *et seq.* As to whether such was intended by the parties is a question of fact; and the courts will "permit or prevent the application of the doctrine as the same may accord with the intent of the parties and the right and justice of the matter." *Odom v. Morgan*, 177 N.C., p. 369.

The following statement of the law, taken from 27 Cyc., 1379, we apprehend, is applicable, in substance at least, to the facts of the present case:

"The technical doctrine of merger will not be applied contrary to the agreement or the express or implied intention of the parties; and, therefore, in equity, there will be no merger of estates when a mortgagee receives a conveyance of the equity of redemption, when such a result would be contrary to his real intention in the transaction, or to the bargain made by the parties at the time. This is the case where the mortgagee means to keep the security alive for his own protection as against other liens or encumbrances, and also where the conveyance is not intended by the parties to be in satisfaction of the mortgage debt, but only as additional security for it. The question whether or not the parties intended that a merger of estates should take place is a question of fact. It is not settled by the mere recording of the deed. But the intention that there should be no merger may be shown by a stipulation in the deed or other express declaration of the parties, or the fact that the mortgage does not cancel or surrender the evidences of the debt or release the mortgage, but on the contrary, retains them, or that he assigns the mortgage to a bona fide purchaser, representing it as a good and valid security. On the other hand, if he assumes to deal with the estate as absolute owner, and conveys it to another, it proves a merger. In the absence of any such proof, the question must be determined by a preponderance of the evidence presented." 188 N.C. 145, 146-47, 124 S.E. 122, 123 (1924).

The facts in this case demonstrate that the 2003 conveyance was intended to supplant neither the debtors' equitable, possessory interest in the property nor the security interest held by Franklin. Both parties ignored the deed and acted as if the debtors owned the property until the present time, and the debtors would have had grounds to set the deed aside as a substitute mortgage if they were to have had the need to do so. The debtor has remained in possession of the property from the date of

4

the original contract in 1997. It is clear that the intention of the parties throughout this series of events was to maintain the debtors in the residence and to continue to provide the residence as security for the money owed to Franklin SIS.

Since the mere act of executing the deed in 2003 should not in and of itself be dispositive of the question of the validity of the 1997 deed of trust, the next question is whether or not the note secured by the 1997 deed of trust was somehow satisfied, rendering the deed of trust empty and unenforceable.

Article 3 of the North Carolina Uniform Commercial Code provides a specific method for discharging an instrument such as a promissory note:

> (a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing. N.C. Gen. Stat. § 25-3-604.

In this case, Franklin maintained possession of the original promissory note and deed of trust which was properly recorded in the deed registry. There is no evidence that any of the events subsequent to the 1997 transaction were meant to in any way nullify the original security documents. The language used in the agreements, along with the other documentation relating to the history between the parties shows that the parties did intend these new agreements to relate to the 1997 note and deed of trust.

## V. CONCLUSION

The deed of trust securing repayment of the 1997 note executed by the debtors in favor of Franklin remained valid and enforceable as of the date of the filing of the petition on May 4, 2009.

5

The promissory note had neither been discharged nor satisfied by the execution of the purported deed to Franklin in 2003, nor had it been revoked by any subsequent act or agreement by either party. The 1997 promissory note and deed of trust both remained valid in that neither had been canceled.

Respectfully submitted this 27th day of January, 2010.

        ROYSTER, CROSS & HENSLEY, LLP

        s/Dale W. Hensley
        Dale W. Hensley
        135 College Street
        Oxford NC 27565
        (919)-693-3131
        Fax: (919) 693-8014
        dhensley@roystercross.com
        NC State Bar No.: 25556